**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **SHIRLENE HILL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **2:10-cv-0551-WHA-WC** |
| vs. | ) | |
| | ) | |
| **FIRST PREMIER BANK,** | ) | |
| | ) | **JURY TRIAL REQUESTED** |
| Defendant. | ) | |

**FIRST AMENDED & RESTATED
CLASS ACTION COMPLAINT**

COMES NOW the Plaintiff, SHIRLENE HILL, individually and on behalf of a class of persons or entities who are similarly situated, and hereby submits this First Amended & Restated Class Action Complaint against Defendant, First Premier Bank. In support thereof, the Plaintiff states as follows:

**INTRODUCTION & NATURE OF THE CASE**

1.      This class action lawsuit arises from a pre-approved credit card scheme provided by the Defendant, First Premier Bank (hereinafter "Defendant"), to low-income consumers such as the Plaintiff. The Defendant's scheme involves directly mailing a solicitation letter to targeted consumers for a "pre-approved" credit card. The Defendant instructs the consumer through an initial mailing that he or she has been pre-approved for a First Premier Bank credit card and can confirm his or her account online, by phone, or by completing and returning an attached confirmation form to the Defendant by mail.

2.      After registering the account by phone, mail or internet, the Defendant sends the consumer a credit card with a credit limit ranging from $250.00 to $400.00 about 7 to 14 days later. The consumer later receives a bill statement after receiving the

credit card. The bill statement shows various start-up fees and charges that total approximately 60-80% of the consumer's total credit limit. These fees are not disclosed to the consumer either before or at the time the account is opened. This fraudulent practice, known in the industry as "fee harvesting", enables the Defendant to target consumers by enticing them with a pre-approved credit card and then to enrich itself by charging a "new balance" consisting of numerous, previously undisclosed fees. Meanwhile, the Defendant has little to no exposure to any business risks associated with a typical extension of credit.

3. The Plaintiff and the putative class are victims of this scheme. The basis of this class action lawsuit is that the Defendant has violated its obligations to disclose the details of the various fees charged to the Plaintiff and the putative class as required by the Truth in Lending Act. This conduct has proximately caused the Plaintiff and the putative class to incur substantial charge-off debts, lowered credit scores, and other damages, which will be set out in detail, *infra.*

## PARTIES, VENUE, & JURISDICTION

4. Plaintiff, SHIRLENE HILL, (hereinafter referred to as the "Plaintiff"), is an adult resident of Eufaula, Barbour County, Alabama.

5. The putative class, which is described, *infra*, consists of persons who are victims of the Defendant's scheme on a nationwide basis.

6. Defendant, FIRST PREMIER BANK, is a corporation created under the laws of the state of South Dakota with its principal office in Sioux Falls, South Dakota. Defendant specifically conducts business in Alabama and nationwide through direct mail

solicitations for First Premier Bank credit cards to consumers and subsequently provides credit services to consumers who elect to enlist its services.

7. This Court's jurisdiction arises under 28 U.S.C. § 1331 pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1640(e), the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.A. § 1692k(d), and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.A. § 1681p.  A substantial part of the events and omissions giving rise to this lawsuit occurred in Eufaula, Barbour County, Alabama; thus, jurisdiction is proper in the Northern Division of the Middle District of Alabama.

## CLASS ALLEGATIONS

8. Plaintiff brings this action as a nationwide putative class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The putative class is defined as follows: "All persons in the United States who were First Premier Bank credit card holders and/or credit card account holders during the last four years and whom were charged fees associated with their First Premier Bank credit card." Plaintiff maintains the right to create subclasses if necessary.

9. Excluded from the proposed class is any entity in which any member of the judiciary and/or any counsel of record owns a controlling interest, any member of the judiciary, any entities currently in bankruptcy, any entity whose obligations have been discharged in bankruptcy, and any governmental agency or entity.

10. The exact number of class members is unknown to Plaintiff at this time, but such information can be ascertained through appropriate discovery, specifically from records maintained by Defendant.

## EXISTENCE AND PREDOMINANCE OF COMMON QUESTIONS OF LAW AND FACT

11. There are common questions of law and fact of general interest to the class. These common questions of law and fact predominate over any questions affecting only individual members of the class. Common questions include, but are not limited to, the following:

   a. Whether Defendant engaged in a widespread and systematic practice of failing to disclose specific fees of the First Premier pre-approved credit card between the Defendant and the Plaintiff/putative class;

   b. Whether the Defendant's conduct constitutes a violation of the Truth in Lending Act, ("TILA");

   c. Whether Plaintiff and class members are entitled to class relief as requested herein;

   d. Whether the Defendant's conduct constitutes a violation of the Fair Debt Collection Practices Act; and

   e. Whether the Defendant's conduct constitutes a violation of the Fair Credit Reporting Act.

## TYPICALITY AND NUMEROSITY

12. The claims of the named Plaintiff are typical of the claims of the class. The class is so numerous that the maintenance of individual claims is impractical. Based on information and belief, there are thousands of potential class members.

## ADEQUATE REPRESENTATION

13. The Plaintiff will fairly and adequately protect the interests of the members of the class and has no interest antagonistic to those of other class members. Plaintiff has retained class counsel competent to prosecute class actions and such class counsel is financially able to represent the class.

**SUPERIORITY**

14.     The class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impracticable. The interests of judicial efficiency favor adjudicating the claims for the putative class rather than for the Plaintiff on an individual basis.

15.     Questions of law and fact predominate over any questions affecting only individuals.

**FACTS**

16.     Sometime in late June of 2009, the Plaintiff received a letter from the Defendant stating that she had been pre-approved for a First Premier Bank credit card.

17.     The pre-approval letter informed the Plaintiff that she could confirm her pre-approved status in one of three ways:  (1) by phone, (2) by completing and returning an attached confirmation form to the Defendant by mail, or (3) online.

18.     Plaintiff decided to confirm and activate her account status by phone and, thus, called the Defendant either on or shortly after June 25, 2009.

19.     The Plaintiff spoke with one of the Defendant's customer service representatives who followed a scripted question and answer format to open the Plaintiff's account.  The Defendant's representatives follow this same script when processing account confirmations by phone for all customers nationwide.

20.     The representative first asked the Plaintiff to recite her confirmation number that corresponded to the pre-approval letter. Plaintiff complied.

21.     The representative then requested Plaintiff's street address, date of birth, Social Security number, employment status, and monthly income before taxes. Plaintiff

complied. The representative input this information into the Defendant's computer system to create an account.

22. The representative informed Plaintiff that the credit card would carry an APR of 9.9%, so long as payments were made on time.

23. Next, the Defendant's representative informed the Plaintiff that an additional cardholder could be added to the account for a $20 annual fee. Plaintiff stated that she wanted to add an additional cardholder and agreed to accept the fee.

24. Defendant then told the Plaintiff about an optional "Payment Protection Plan" that provides payment protection for qualifying events. Defendant explained that the cost of the plan is $0.89 for every $100.00 on the Plaintiff's ending monthly balance. Plaintiff agreed to enroll into the "Payment Protection Plan."

25. Besides the 9.9% APR, the $20 annual fee for an additional cardholder, and the cost of the "Payment Protection Plan," the Defendant's representative did not mention or disclose any other fees or charges associated with the credit card to the Plaintiff during this conversation. Based on information and belief, the Defendant follows this same scripted process for all of its customers nationwide.

26. The Defendant's representative then input the Plaintiff's information in the Defendant's computer system to determine if she was approved. The system "instantly" approved the Plaintiff, and the representative told her that she was approved for the credit card. The Plaintiff's account was opened and activated at that point. The Defendant's representative made no other disclosures related to the credit card account. Based on information and belief, this is consistent with the Defendant's practice nationwide.

27. Plaintiff received her activated credit card approximately one week after her phone conservation with the Defendant's phone representative. Plaintiff made three purchases totaling approximately $50.00. Plaintiff's next purchase attempt for gas was denied. She learned that she had reached her credit limit already.

28. After the denied purchase, several days later the Defendant sent the Plaintiff a bill summary that stated her total balance as $200.77. The bill summary, which did not reflect the Plaintiff's three purchases totaling $50, provided the following accounting of other "purchases" and "debits" that composed the $200.77 balance:

| Purchases | Amount |
|---|---|
| Additional Card Fee | $20.00 |
| Program Fee | $95.00 |
| Account Set-up Fee | $29.00 |
| Monthly Servicing Fee | $7.00 |
| | |
| Debits | |
| Annual Fee | $48.00 |
| Premier Credit Protection | $1.77 |
| | |
| TOTAL | $200.77 |

29. Prior to the receipt of the bill summary, the Plaintiff was not informed of nor signed any agreement pertaining to the "Program Fee," "Account Set-up Fee," "Monthly Servicing Fee," or "Annual Fee." Based on information and belief, the Plaintiff's experience is consistent with the Defendant's practice nationwide.

30. On or about July 27, 2009, the Plaintiff contacted First Premier to dispute the existence of the fees present on her bill summary and the denial of her purchase attempt.

31. After no success in her discussions concerning the validity of the fees, Plaintiff made arrangements to make a $25.00 payment to First Premier. Due to the

7

Plaintiff's financial status, First Premier agreed not to process the Plaintiff's payment until August 3, 2009, so that her Social Security check could clear. Instead, First Premier processed the payment immediately on or about July 27, 2009, and the Plaintiff's account went into delinquency.

32. Since July 27, 2009, the Plaintiff has refused to make any payments to First Premier due to her continued dispute over the validity of the various fees and First Premier's failure to fulfill its promise to process the Plaintiff's payment upon an agreed date.

33. Since August 2009, the Plaintiff has and continues to receive phone calls twice a week from agents or employees of First Premier demanding payment on her account. The Plaintiff repeatedly informs the callers she disputes the debt and refuses to make any payments because she did not agree to the various fees imposed on her account. First Premier continues to harass the Plaintiff for payment to this day.

34. To date, the Plaintiff has not made any purchases aside from the first three purchases totaling $50 described above. First Premier has informed the Plaintiff that her alleged debt totals more than $400.00. In addition to being indebted to First Premier for charges and fees she did not agree to, the Plaintiff has suffered damage to her credit.

## COUNT I
### (Violation of the Truth in Lending Act)

35. Plaintiff adopts and incorporates by reference all of the preceding allegations; and to the extent this claim contradicts any other legal claim, it is pleaded in the alternative.

36. Defendant violated the disclosure requirements of the Truth in Lending Act ("TILA"), 15 U.S.C.A. § 1601 et seq., by failing to disclose to the Plaintiff the

imposition of the aforementioned fees for the issuance of her pre-approved credit card before or at the time the account was opened.

37.     The Plaintiff did not discover the Defendant's violation until she received her first bill summary denoting the imposition of the aforementioned fees.

38.     Such violation was the proximate cause of damage to Plaintiff, and Plaintiff suffered damages as set out in above.

WHEREFORE PREMISES CONSIDERED, Plaintiff and putative class demand judgment against Defendant for compensatory and punitive damages, treble damages, attorney fees, plus interest from the date of injury, costs and any other relief to which they may be entitled.

## COUNT II
### (Violation of the Fair Debt Collection Practices Act)

39.     Plaintiff adopts and incorporates by reference all of the preceding allegations; and to the extent this claim contradicts any other legal claim, it is pleaded in the alternative.

40.     Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.A. § 1692 et seq. by continuing to harass the Plaintiff in an effort to collect on a disputed bill.

41.     Such violation was the proximate cause of damage to Plaintiff, and Plaintiff suffered damages as set out in above.

WHEREFORE PREMISES CONSIDERED, Plaintiff and putative class demand judgment against Defendant for compensatory and punitive damages, treble damages, attorney fees, plus interest from the date of injury, costs and any other relief to which they may be entitled.

## COUNT III
### (Violation of the Fair Credit Reporting Act)

42. Plaintiff adopts and incorporates by reference all of the preceding allegations; and to the extent this claim contradicts any other legal claim, it is pleaded in the alternative.

43. Defendant violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.A. § 1681 et seq., by wrongfully reporting bad debt to credit reporting agencies.

44. Such violation was the proximate cause of damage to Plaintiff, and Plaintiff suffered damages as set out in above.

WHEREFORE PREMISES CONSIDERED, Plaintiff and putative class demand judgment against Defendant for compensatory and punitive damages, treble damages, attorney fees, plus interest from the date of injury, costs and any other relief to which they may be entitled.

**PLAINTIFF AND PUTATIVE CLASS DEMAND A TRIAL BY STRUCK JURY**

Respectfully Submitted,

/s/ J. Matthew Stephens
J. Matthew Stephens, ASB-3788-E66S
Attorney for Plaintiff

**OF COUNSEL:**

**MCCALLUM, METHVIN & TERRELL, P.C.**
The Highland Building
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone:     (205) 939-0199
Facsimile:     (205) 939-0399
Eamil:         mstephens@mmlaw.net

10

**ADDITIONAL COUNSEL:**

R. Brent Irby, ASB-2773-R79R
**MCCALLUM, HOAGLAND, COOK & IRBY**
905 Montgomery Highway, Suite 201
Birmingham, AL 35216
Telephone: (205) 824-7767
Facsimile: (205) 824-7668
Email: birby@mhcilaw.com


**CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF on this the 8th day of July, 2010.

/s/   J. Matthew Stephens
**OF COUNSEL**


I also certify that I have served a copy of this pleading by email and by placing it in the U.S. Mail on this the 8th day of July, 2010, to the following attorney:

James R. McGuire, Esq.
**MORRISON & FOERSTER, LLP**
425 Market St.
San Francisco, CA 94105
(Attorney for Defendant)

/s/   J. Matthew Stephens
**OF COUNSEL**